## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ISSA FEGHALI**<br>6625 Sahalee Dr<br>Fort Worth, TX 76132, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. _____ |
| **LORETTA E. LYNCH**<br>U.S. Attorney General<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530-0001, | ) ) ) ) ) | |
| Defendant. | ) ) ) ) | |

## COMPLAINT FOR WRIT OF MANDAMUS

1.     This is a civil action brought pursuant to 28 U.S.C. § 1331 and § 1361 to compel Defendant and those acting under her to complete the adjudication of Plaintiff Issa Feghali's pending appeal to the Department of Justice Access Review Committee (ARC) of the April 2012 revocation of his security clearance by the Federal Bureau of Investigation (FBI). Plaintiff previously filed a lawsuit, *Feghali v. Lynch*, 1:15-cv-01738, seeking a writ of mandamus to compel the Defendant and her department to carry out its legal duty to adjudicate Plaintiff's security clearance appeal as was then pending.  As set forth in more detail below, Defendant her and her department took additional steps toward the requested adjudication, so Plaintiff voluntarily dismissed that lawsuit.

1

Defendant and her department have halted action on the adjudication that was both required by law and promised. Plaintiff has no other option but to again seek the assistance of this Court.

## JURISDICTION AND VENUE

2.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 and §1361 [to compel an officer or employee of the United States or agency thereof to perform a duty owed to the plaintiffs] and 5 U.S.C. § 704 [no other adequate remedy] and § 706 [to compel agency action unlawfully withheld or unreasonably delayed].

3.      Venue is appropriate in this judicial district under 28 U.S.C. §1391(b) & (e) because the federal department and agency making the relevant decisions that injured Plaintiff are headquartered in and operate in this district, and they made those decisions in this district.

## PARTIES

4.      Plaintiff, Issa Feghali, is a citizen United States and resides in the State of Texas. He was employed by the FBI as a Language Specialist in July 2007, as an employee and before that as a contractor since March 1997. However, due to the pending resolution of his appeal of the revocation of his security clearance, after being suspended from duty by the FBI without pay since April 2012, Mr. Feghali has retired from his employment with the FBI. Upon restoration of his clearance, Mr. Feghali seeks to resume his career.

2

5.      Defendant Loretta E. Lynch is the Attorney General of the United States

and, as such, is the head of the Department of Justice and it subordinate components. The

Department of Justice Access Review Committee (ARC) is a subordinate entity of the

Department of Justice. As such, Ms. Lynch is responsible for the actions, omissions and

practices of the Department of Justice Access Review Committee (ARC), which is the

final appeals authority for FBI employees regarding decisions involving their security

clearances. In addition, the Attorney General is also the head of the FBI and is

responsible for the personnel actions, omissions and practices of the FBI. Ms. Lynch is

here sued only in her official capacity as head of the Department of Justice Access

Review Committee (ARC) and the FBI.

## STATEMENT OF CLAIM

6.      Plaintiff Issa Feghali, was awarded a Master's Degree in Mathematics, from

Baylor University, Waco, TX in 1973, and a Master's Degree in Computer Science, from

American University, Washington, DC in 1988. He was awarded a Doctorate in

Mathematics Education, from the University of British Columbia, Vancouver, BC,

Canada in 1979. He is fluent in English, French, Arabic. Prior to joining the FBI he was

employed as a Professor of Mathematics and Computer Science, at Marymount

University, Arlington, VA from 1986 until 2007.

7.      Dr. Feghali has served the FBI in a variety of positions of great danger to himself

and his loved ones. He has been highly successful in his activities on behalf of the FBI and the

3

United States. He has received a numerous of awards for his work. For over fifteen (15) years,

Dr. Feghali was continually recognized for his efforts and given superior Perfomance Appraisal

Reports. Dr. Feghali's supervisors summarized Dr. Feghali's value: "Feghali possesses a unique

combination of linguist, cultural, and computer science skills that enhances the capabilities of the

FBI and are of extreme value in today's [Counter-terrorism] environment." Partly due to the

successful work of Dr. Feghali, many American lives have been saved. If Dr. Feghali were to be

permitted to resume his employment with the Bureau, he would continue this same dedicated

service to the country in the future.

8.      By letter dated April 24, 2012, the FBI Assistant Director in charge of the

FBI Security Division revoked Dr. Feghali's security clearance. The reason given for the

revocation was Security Division's conclusion that Mr. Feghali had used countermeasures

during a polygraph examination and had shown lack of candor about the matter during the

examination.

9.      As provided by FBI policy, Dr. Feghali requested reconsideration of this

decision and on March 27, 2013, the FBI affirmed this decision on reconsideration. Dr.

Feghali thereupon appealed the reconsideration decision to the ARC. *See* Executive Order

No.12968, § 5.2 (1995).

10.     The reason proffered for the denial of Dr. Feghali's security clearance was

that he had engaged in conduct involving questionable judgment, lack of candor,

dishonesty, or unwillingness to comply with rules and regulations. These allegations arose

after Dr. Feghali was administered a polygraph examination on August 9, 2011.

11.     During the course of examination, the polygraph operator concluded that Dr. Feghali showed "specific and frequent clusters of atypical physiology" during three series of questions and therefore the polygraph operators could not render an opinion on the truthfulness of his responses.

12.     During a post-examination interview, Dr. Feghali denied having done any research of any kind for the examination or having tried to manipulate its results. However, during that interview and in a subsequent interview on January 18, 2012, he stated that he had read information about polygraphs. He further stated that he had used "mental imagery" to enhance his physiological responses during the polygraph examination. However, the "mental imagery" used by Dr. Feghali was a not measure that could have helped an untruthful person pass the polygraph, and Dr. Feghali did not use mental imagery for that purpose.

13.     There is no evidence or allegation that Dr. Feghali is not loyal to the United States or that he has ever compromised classified information. As such, Dr. Feghali acted with the sole intent of passing the examination and avoiding any problems in doing so. The FBI based its revocation of his security clearance on concerns raised by Dr. Feghali's statements indicating he had sought to pass the polygraph examination without any problems. To respond to any concerns, Dr. Feghali requested a follow-up polygraph examination to resolve any questions about his honesty. This examination was initially

scheduled by the FBI in 2012 but the FBI did not follow-through with the examination at that time.

14.     The Department of Justice Access Review Committee (ARC) is charged under the Adjudicative Guidelines with examining a sufficient period of a person's life to make an affirmative determination whether the person is eligible for a security clearance. In this process, the ARC must carefully weigh a number of variables known as the "whole person concept." 32 C.F.R. part 147, "Adjudicative Guidelines for Determining Eligibility for Access to Classified Information" § 2.

15.     The Adjudicative Guidelines provide that every case must be judged on its own merits, but that "any doubt concerning personnel being considered for access to classified information will be resolved in favor of national security." Further, "the ultimate determination of whether the granting or continuing of eligibility for a security clearance is clearly consistent with the interests of national security must be an overall common sense judgment based upon careful consideration of the [individual guidelines] ... in the context of the whole person." The individual seeking the security clearance bears the burden of proving that such clearance is fully consistent with the interests of national security.

16.     In his reconsideration request and his hearing before the ARC, Dr. Feghali testified that he formed negative thoughts during the August 2011 examination to emphasize his truthful responses to questions regarding terrorism and espionage. He

stated that he had done so based on his concerns that his answers about loyalty to the

United States would not register strongly enough during the examination. In addition, he

explained that his statements about conducting research on polygraphs or using

countermeasures were truthful because the limited reading he had done did not amount to

"research" in his mind. He also testified that he had not viewed calling to mind negative

thoughts about terrorism or espionage to enhance the strength of his truthful responses as

"countermeasures." Dr. Feghali stated that his actions in this matter had been misguided

and attested that he had not been intended to conceal anything or deceive anyone, and he

asserted that he had been fully forthcoming with the FBI about what he had done and why

he had done it. He further stated that the matter could have been resolved if the FBI had

followed up with an additional polygraph examination that had originally been scheduled,

and he renewed a request for such an examination at the ARC hearing.

17.    Applying the "whole person" concept and all of the circumstances in a

decision dated July 17, 2014, the ARC concluded that it could not at that time sustain the

FBI's revocation determination. The ARC noted observed that there was extensive

evidence of Dr. Feghali's significant contributions to the FBI and expressed reluctance to

take action that would deprive the Department of Dr. Feghali's services, given a the lack

of independent grounds in the record (beyond the polygraph issue) for questioning Dr.

Feghali's background or conduct. It also considered Dr. Feghali's consistent admissions

of bad judgment during the incident, his expressions of regret. Regarding Dr. Feghali's

stated intention to resolve the matter by cooperating with a followup polygraph examination and the FBI's objections thereto, the ARC directed the FBI to demonstrate a specific harm, danger that would result from doing a follow-up polygraph investigation.

18.    By a Memorandum dated August 11, 2014, without demonstrating any specific harm, the FBI expressed its objections to providing a follow up polygraph to Dr. Feghali and has refused to polygraph Dr. Feghali for a second time. Notwithstanding the ARC's finding that it could not sustain the FBI's revocation determination, the FBI has not returned Dr. Feghali to work and he remains in a non-pay status.

19.    By a letter dated, September 2, 2014, Dr. Feghali, through counsel, responded to the FBI's objections to allowing Dr. Feghali a second polygraph.

20.    By letter dated, June 22, 2015, Dr. Feghali, through counsel, urged the ARC to follow through on its July 17, 2014, decision pointing out that his clearance had been revoked in April 2012 and that more than three years had gone by. Counsel again urged that Dr. Feghali's case be resolved by ordering the FBI to administer a follow-up polygraph examination of Dr. Feghali without further delay.

21.    Because neither Dr. Feghali nor his counsel received a response to the June 22, 2015, letter from his counsel to the ARC and Dr. Feghali had been retained in a non-pay status without receiving any further information from the ARC, on October 15, 2015, Dr. Feghali filed a lawsuit in this Court, *Feghali v. Lynch,* 1:15-cv-01738, asking this court to:

(A) determine that based on the ARC's conclusion that it could not sustain the revocation of Dr. Feghali's clearance, Dr. Feghali should be restored to his FBI position effective July 17, 2014;

(B) direct Defendant and those acting under her to perform their duty to complete the adjudication of Dr. Feghali's security clearance; and

(C) declare that there are no just grounds for the lengthy delays in completing the adjudication of Dr. Feghali's appeal.

22.     On December 7, 2015, the ARC issued a Memorandum finding that the Dr. Feghali had cooperated with the FBI's polygraph examination process by candidly admitting his allegedly mistaken use of countermeasures and offering to take a retest to support that claim and directed the FBI to administer another polygraph examination to Dr. Feghali within 30 calendar days. The ARC directed the FBI to provide the results of that examination (along with its comments on them) to the ARC that within 20 calendar days of the date of the examination, and Dr. Feghali to respond to the FBI submission within 15 days, stating that the ARC would issue a final decision within 30 calendar days after receiving the submissions of the parties.

23.     Based upon this ruling by the ARC Dr. Fegahli, through counsel, filed a notice of voluntary dismissal of his then-pending lawsuit, *Feghali v. Lynch,* 1:15-cv-01738, on January 26, 2016.

24.     On January 7, 2016, Dr. Feghali cooperated in a follow-up polygraph retest.

25.     On January 27, 2016, the FBI responded to the ARC again contending that the FBI examiner had observed the use of countermeasures during the examination and urging that his clearance be revoked.

26.     On February 10, 2016, through counsel Dr. Feghali responded to the January 27 FBI Memo pointing out that under the circumstances the FBI had provided no grounds for finding the polygraph results were valid or for accepting the polygraph examiner's conclusory, unsupported claim of detecting "countermeasures." Counsel indicated Dr. Feghali's suitability for a security clearance should be judged under the Adjudicative Guidelines using the "whole person" concept, setting aside the invalid polygraph result and countermeasures allegation.

27.     Although the ARC had indicated in its December 7, 2015, ruling that it would issue a final decision within 30 calendar days after receiving the submissions of the parties, no decision has been issued. Counsel for the Plaintiff has inquired regarding the final decision on Dr. Feghali's appeal and has been informed that the ARC is unable to address his appeal because one member has retired and another member had died during the summer of 2016 and no one has been assigned to replace these members.

28.     The district courts have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the Plaintiff. 28 U.S.C. §1361. Mandamus relief will be granted if the Plaintiff can demonstrate that the three enumerated conditions are present: (1) a clear right to the relief sought; (2) that the Defendant has a duty to do the act in question; and

(3) no other adequate remedy is available. *See, e.g., Kim v. USCIS*, 551 F. Supp. 2d 1258, 1261 (D. Colo. 2008); *Sawan v. Chertoff*, 589 F. Supp. 2d 817, 824 (S.D. Tex. 2008).

29.     Based upon Executive Order No.12968, §§ 3, 5 and 17, 50 U.S.C. § 435(a)(5), 28 C.F.R. part 17, and the holding in *Doe v. Dep't of Justice*, 118 M.S.P.R. 434 ¶29 (2012), it is plain that the ARC and the FBI have a duty to adjudicate Plaintiff's appeal and that Plaintiff has the right to have his case adjudicated. *See also Ranger v. Tenet*, 274 F. Supp. 2d 1, 9-10 (D.D.C. 2003) (holding contractor to CIA had due process right to a meaningful opportunity to contest allegations in revocation of a security clearance). Further delay in the adjudication of the Plaintiff's application is unnecessary and unreasonable as Plaintiff has met every requirement.

30.     Without any valid cause, Defendant has unreasonably delayed and refused to complete the adjudication of Plaintiff's duly-filed appeal. Plaintiff has no other or further administrative remedy to compel the Defendants to do their job and prevent the needless delay in a non-pay status and inaction that Plaintiff is now suffering.

WHEREFORE, Plaintiffs pray that this Court enter an ORDER:

1.     Directing the FBI to reinstate Dr. Feghali into a pay status effective July 17, 2014 (based on the ARC's conclusion that it could not sustain the revocation of Dr. Feghali's clearance);

2.     Directing Defendant and those acting under her to perform their duty to complete the adjudication of Dr. Feghali's security clearance;

3.    Declaring that there are no just grounds for the lengthy delays in completing the adjudication of said appeal;

4.    Grant Plaintiff attorney's fees and costs under the Equal Access to Justice Act to be paid by the Defendants; and

5.    Grant such other and further relief as this Court deems just and proper.

DATE: _12 - 20 - 16_

_____

Richard L. Swick
DC Bar No. 936930
Richard W. Stevens
DC Bar No. 443320
Swick & Shapiro, P.C.
1101 15th Street, N.W.
Suite 205
Washington, DC 20005
(202) 842-0300 (phone)
(202) 842-1418 (fax)

Attorneys for Plaintiff